In the Matter of ABRAHAM OBERSTEIN, an Attorney, Respondent.

First Department, June 24, 1927.

**Attorney and client — attorney severely censured for converting funds of client for few months.**

In view of the fact that the respondent, an attorney at law, has heretofore borne an excellent reputation, his failure to remit to his client for several months funds due to her and his use thereof calls for a severe censure only.

The rules laid down for the guidance of the legal profession in dealing with their clients' money are salutary and wholesome. They are made for the honor of the profession as well as the protection of the client, and must be obeyed to the letter.

DISCIPLINARY proceeding brought against an attorney by the Association of the Bar of the City of New York.

*E. Crosby Kindleberger* of counsel [*Einar Chrystie*, attorney], for the petitioner, the Association of the Bar of the City of New York.

*John C. Robinson* of counsel [*John J. Freschi* with him on the brief], for the respondent.

DOWLING, P. J.  The respondent was admitted to practice as an attorney and counselor at law at a term of the Appellate Division of the Supreme Court, First Department, in November, 1896.

This proceeding against respondent was commenced on February 7, 1924.  The two charges of unprofessional conduct against him have been tried before the learned official referee.  He has found in favor of respondent on one charge, which, for the sake of brevity, may be referred to as the Stewart charge, and has recommended that the said charge be dismissed for failure of proof.  That recommendation, upon the record, we think was justified, and we approve and accept the same.

The second charge may be referred to as the Gadjos charge, based on the following facts: In December, 1922, respondent was acting as attorney for George Gadjos, an infant who had been injured by one of the trucks belonging to the Standard Oil Company, and, as well, for the father of said infant.  Actions were brought by respondent against the Standard Oil Company on behalf of said infant, to recover the damages for the injuries he had sustained, and on behalf of his father, to recover for the loss of the infant's services.  A settlement of the action was arrived at in December, 1922, after the father had died and the infant's mother had been substituted as his guardian *ad litem.*

On December 12, 1922, an order was made by the Supreme Court approving the settlement, which amounted to $11,000 in the infant's case, and $8,000 in the parent's case.  By this order respondent was allowed a fee of $3,666.66 for services in the infant's case, besides $500 for preparation for trial, and $4,000 in the parent's case.

Respondent received a check from the defendant on December 13, 1922, in settlement of the two actions, as aforesaid.  It is charged that he failed to advise the infant's mother that he had received this money in settlement, and that about the middle of January, 1923, he falsely represented to her and to her friend, Mrs. Taylor, that he still had not received the money; but that when Mrs. Taylor suggested calling for help on a friend of hers whose husband was a vice-president of the defendant in the action, respondent advised her that this would not be a wise thing to do, and on the following day respondent advised Mrs. Gadjos that he had received the money.

It is further charged that on March 3, 1923, respondent falsely represented to Mrs. Taylor that he had paid the infant's share, amounting to $6,833.34, to the United States Fidelity and Guaranty Company which had issued the bond for the guardian, whereas he did not pay over the money to said company until March 7, 1923, having converted the same to his own use from December 13, 1922, the date of its receipt, until March 7, 1923.   Further, respondent failed to pay to Mrs. Gadjos the amount due her in the loss of service action until April 3, 1923, thus having converted such amount to his own use from December 13, 1922, to said date.

Respondent denies that he withheld information of the payment under the settlement as charged, and on the contrary claims that he advised Mrs. Gadjos thereof on the very day he received the money, and there is corroborative testimony that she knew of the receipt within a week thereafter.

It furthermore appears that respondent deposited the $19,000 received under the settlement in an account called " special," but he nevertheless proceeded to check out from such account moneys which he used to pay debts that he had incurred in a losing business venture, and the account was all used up for this purpose.   But respondent strenuously denies that there was ever any intention to defraud on his part.

The incontrovertible fact in this matter is that respondent received money in settlement of his client's claims on December 13, 1922, and did not pay it over until March 7, 1923, and April 3, 1923, respectively.   Various extenuating circumstances are urged in palliation of his offense, but would not suffice to excuse it. Respondent has always admitted the facts, has expressed his regret for the fault he has committed, and has promised that his conduct hereafter will be beyond criticism.

The withholding by an attorney from his client either of information as to the fact of a settlement having been made, or of a payment having been made thereunder, is reprehensible.   Still more reprehensible is the withholding of prompt payment to the client of whatever is due him under the settlement.   The constant injunction laid upon members of the bar to treat money belonging to their clients strictly as trust funds, not to be touched by them for any private purpose, finds constant justification in records such as this, where an attorney of theretofore blameless reputation was tempted by the continued presence of the client's funds in his own account, even if marked " special," to use them for his own private purposes.   Nor can any extenuating circumstances excuse such an act.   They can only be considered in connection with the punishment to be administered for the offense.

The respondent has been an active member of the bar for over thirty years. Down to the time of the making of these two charges before referred to, he seems to have borne a very high reputation. The character witnesses who testified for him were men of standing. There is no suggestion of any prior episodes in his professional life which would warrant criticism. It was unfortunate for him that the opportunity to use his clients' money came to him when the temptation so to use it was strong because of heavy losses in his business ventures and illness in his family. But his yielding to the temptation was none the less unprofessional and wrong. The only things in his favor, outside of his long record of honest professional life, are that he did not lie about his actions and that he paid back the money to his clients ten months before any disciplinary proceedings were brought against him. All this seems to confirm his claim that he had no intent to defraud his clients. But none the less, he deserves and should receive the severest censure of this court for what he did with his clients' money, and nothing save the fact that it is the first dereliction of duty proved against him in thirty years of seemingly upright practice of his profession, prevents a more severe penalty being applied.

It must be understood by the members of the legal profession that the rules laid down for their guidance in dealing with their clients' money are salutary and wholesome, that they are made for the honor of the profession as well as the protection of the client, and that they must be obeyed to the letter.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Respondent censured.